# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49596-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JIMMY WOODBEE PIERCE, | |
| Appellant. | |

BJORGEN, J.[*] — Jimmy Pierce appeals from his convictions of attempted first degree child molestation and first degree child molestation.

He argues that (1) the trial court erred by determining that the victims, P.P. and her relative, J.F.,[1] were competent to testify, (2) the trial court erred by admitting child hearsay statements made by P.P. and J.F., (3) the trial court erred by not dismissing juror 8, and (4) the State did not present sufficient evidence for a jury to convict him of attempted first degree child molestation and first degree child molestation.

We affirm.

---

[*] Judge Thomas Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

[1] *See* Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases*, http://courts.wa.gov/appellate_trial_courts. In this case, P.P. and J.F. were both under the age of 18 when the abuse occurred. Therefore, we refer to the victims using their initials.

FACTS

In August 2014, P.P. and J.F. were on a camping trip with members of their families. Angela Prendiville and Debora Profitt were sitting outside one of the trailers and talking about the fact that Pierce was in the hospital for a heart related issue. Angela[2] is P.P.'s mother. Profitt is the sister of Pierce's wife and is J.F.'s great-aunt. P.P. used to attend a daycare run by Pierce's wife, but P.P. had stopped attending the daycare a few months before the August camping trip. As Angela and Profitt were talking, P.P. stated "out of the blue" that Pierce had carried her to the upstairs of the daycare on his shoulder, then P.P. walked off to the picnic area away from the trailer. Verbatim Report of Proceedings (VRP) (Vol. IX) at 701-02.

Surprised by P.P.'s statement, Angela followed her down to the picnic area and asked P.P. if Pierce had touched her. P.P. initially responded by lowering her head and denying that Pierce had touched her. Sensing that "[s]omething wasn't right," Angela asked a second time, "[D]id he touch you?" VRP (Vol. IX) at 705-06. P.P. said, "Yes." VRP (Vol. IX) at 706. Angela then asked where Pierce touched her, and P.P. replied, "My pee-pee," and pointed to her vagina. According to Profitt, Angela and P.P. were talking alone for 20 to 30 minutes.

Angela then ran up to the other adults, yelling, "He touched her. He touched her." VRP (Vol. IX) at 709. Angela told her husband Patrick that Pierce had touched P.P., and then went into the trailer. After speaking with Angela, Patrick walked down to the picnic area to speak with P.P., where she told him that Pierce had touched her genitals. P.P. then went inside one of

---

[2] We refer to Angela and her husband Patrick Prendiville by their first names to avoid confusion. We intend no disrespect.

the trailers, at which point Patrick told the other adults what P.P. told him about Pierce touching her.

After P.P.'s family returned home from camping, Angela called Child Protective Services (CPS). Angela continued to question P.P. about the touching over the following two to three days. At one point during this questioning, P.P. said that she did not know if Pierce had touched her. Angela testified, "She told me no, and then she told me yes, and then I kept questioning her. . . . I questioned her for three days, and she said, 'Mommy, I don't know.'" VRP (Vol. IX) at 769. On August 13, P.P. attended a forensic interview conducted by Keri Arnold, where P.P. again disclosed that Pierce had touched her genitals.

At the time of the camping trip, J.F. was still attending Pierce's wife's daycare. Although J.F. was present during the August camping trip, she claimed she did not know about P.P.'s disclosure. J.F. and her family were just arriving at the campground when Angela returned to the trailers after talking to P.P., though Angela could not say whether J.F. was present when she told the other adults about the touching. According to Profitt, J.F. was not present when Angela was yelling that "[h]e touched her." VRP (Vol. X) at 915. Profitt thought J.F. was inside Profitt's trailer when Patrick told the other adults about P.P.'s disclosure to him.

The Monday after J.F. and her family returned from camping, J.F. disclosed to Profitt while they were driving that Pierce had touched her genitals. Profitt texted Jamie Robertson, J.F.'s mother, about J.F.'s disclosure. After receiving the text, Robertson called CPS to report J.F.'s disclosure. On August 19, J.F. attended a forensic interview also conducted by Keri Arnold, where J.F. disclosed several instances of Pierce touching her genitals.

No. 49596-1-II

On February 5, 2015, the State charged Pierce with one count of first degree child molestation as to P.P. and three counts of first degree child molestation as to J.F. On October 22, Pierce challenged P.P.'s and J.F.'s competency to testify and moved to exclude their child hearsay testimony.

After a hearing on August 15, 2016, the trial court entered an order finding P.P. and J.F. competent to testify at trial. The order stated in part:

> The court makes the following findings on the *Allen*[3] factors.
>
> 1. P.P. [and J.F. understand their] obligation to speak the truth on the witness stand;
>
> 2. P.P. [and J.F.] had the mental capacity at the time of the incident to receive an accurate impression of it;
>
> 3. P.P. [and J.F. have] sufficient memory to retain an independent recollection of the incident;
>
> 4. P.P. [and J.F. have] the capacity to express in words [their] memory of the incident;
>
> 5. P.P. [and J.F. have] the capacity to understand simple questions about the incident.

Clerk's Papers (CP) at 96-97.

Also on August 15, the trial court entered an order finding child hearsay statements made by P.P. and J.F. admissible. The order stated in part:

> The court makes the following findings on the *Ryan*[4] factors:

---

[3] *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967).

[4] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

4

1. P.P. has no apparent motive to lie;

2. P.P. is generally of good character;

3. P.P. made statements to Angela and Patrick Prendiville (her parents), [Debora] Profitt (a family friend)[,] and Keri Arnold (forensic interviewer), and those statements, though at different times with different purpose, were generally consistent;

4. P.P.'s statements were spontaneous as defined by the case law;

5. There is nothing about the timing of P.P.['s] statements that suggests an improper motive, nor does anything about the relationship between P.P. and the persons she talked to[;]

6. The possibility P.P.'s recollection is faulty is remote;

7. Based on the totality of the circumstances surrounding the making of P.P.'s statements, there is no reason to believe P.P. misrepresented the defendant's involvement.

. . . .

The court makes the following findings on the *Ryan* factors:

1. J.F. has no apparent motive to lie;

2. J.F is generally of good character;

3. J.F. made statements to [Debora] Profitt (her great-aunt), Jamie Robertson (her mother), Keri Arnold (forensic interviewer), and Michelle Breland, ARNP [Advanced Registered Nurse Practitioner], and those statements, though at different times with different purpose, were generally consistent;

4. J.F.'s statements were spontaneous as defined by the case law;

5. There is nothing about the timing of J.F.'s statements that suggests an improper motive, nor does anything about the relationship between J.F. and the persons she talked to[;]

6. The possibility J.F.'s recollection is faulty is remote;

7.  Based on the totality of the circumstances surrounding the making of J.F.'s statements, there is no reason to believe J.F. misrepresented the defendant's involvement.

CP at 99-101.

During trial, one of the jurors informed the court that he believed juror 8 had been sleeping.  After the jury had begun deliberating, Pierce moved to dismiss juror 8.  The trial court questioned juror 8 about whether she had heard all the evidence presented and if she could properly fulfill her function as a juror.  Juror 8 responded that she could, and the trial court denied Pierce's motion to dismiss juror 8.

The jury found Pierce guilty of attempted first degree child molestation of P.P. as a lesser alternative to first degree child molestation.  The jury also found Pierce guilty of one count of first degree child molestation as to J.F, but found him not guilty of the other two counts of first degree child molestation as to J.F.

Pierce appeals his convictions.

## ANALYSIS

### I.  CHILD COMPETENCY TO TESTIFY

Pierce argues that the trial court erred by determining that P.P. and J.F. were competent to testify at trial.  We disagree.

A.      Legal Principles and Standard of Review

All witnesses, children and adults alike, are presumed competent until proved otherwise by a preponderance of the evidence.  *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011).  The burden of proving incompetency is on the party challenging the competency of the witness.  *Id.*

A child's age is not determinative of a child's competency to testify. *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1176 (2005). Rather, our Supreme Court has explained:

> A young child is competent to testify if she: (1) understands the obligation to speak the truth on the witness stand; (2) has the mental capacity, at the time of the occurrence concerning which she is to testify, to receive an accurate impression of it; (3) has a memory sufficient to retain an independent recollection of the occurrence; (4) has the capacity to express in words her memory of the occurrence; and (5) has the capacity to understand simple questions about the occurrence.

*Id.* at 618.

Our Supreme Court has noted that "'[t]here is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness.'" *Id.* at 617 (quoting *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (1990)). We afford great deference to the trial court because "[t]he competency of a youthful witness is not easily reflected in a written record," and we "must rely on the trial judge who sees the witness, notices the witness's manner, and considers his or her capacity and intelligence." *Id*. We may consider the entire record in reviewing the trial court's determination of competency to testify. *Id*.

We review the trial court's determination of competency to testify for a manifest abuse of discretion. *Id*. A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or applies the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id*. A court's exercise of discretion is also unreasonable if it

is premised on a legal error. *State v. Ramirez*, 191 Wn.2d 732, 741, 426 P.3d 714 (2018). Pierce

bears the burden to establish that the trial court abused its discretion in determining that P.P. and

J.F. were competent to testify. *Woods*, 154 Wn.2d at 622.

B.      Competency of P.P. to Testify

Pierce claims the trial court erred in applying the *Allen* factors with respect to P.P.[5] We

hold that the trial court did not abuse its discretion by determining that P.P. was competent to

testify.

1.  Mental Capacity at the Time of the Occurrence

Pierce argues that the trial court erred by determining that P.P. had the mental capacity at

the time of the alleged occurrence to receive an accurate impression of the occurrence.

First, Pierce contends that because the trial court did not establish when the alleged abuse

occurred, it could not have reasonably determined whether P.P. had a sufficient mental capacity

to receive an accurate impression of the event at the time it occurred. P.P. testified at trial that

the incident occurred when she was eight years old and in second grade. Arnold testified that

P.P. told her that the incident occurred during the summer time. P.P. was born in November

2004, so she would have been eight during the summer of 2013. The trial court, therefore, could

have reasonably determined that the incident occurred during the summer of 2013.

Second, Pierce maintains that P.P.'s inability to recall objective facts shows that she did

not have sufficient mental capacity to receive an accurate impression of the incident.

---

[5] Pierce assigns error to findings of fact 1, 2, 3, 4 and 5 regarding the *Allen* factors. However, he
presents arguments related only to *Allen* factors 2 and 3. Unchallenged findings of fact are
treated as verities on appeal. *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).
Because Pierce makes no argument on factors 1, 4, and 5, we decline to consider them.

Specifically, Pierce claims that P.P.'s confusion regarding who her teachers were from kindergarten to fifth grade shows that she did not have a sufficient mental capacity to receive an accurate impression of the incident. Pierce suggests that P.P.'s recollection is faulty because Angela gave different answers when asked who P.P.'s teachers were from kindergarten to fifth grade. However, it is unclear from the record whether P.P. or Angela was generally correct as to who P.P.'s teachers were, and with regard to P.P.'s fifth grade teacher, Angela acknowledged that she had been mistaken and that P.P. had correctly identified her fifth grade teacher.

P.P. also testified about the layout and organization of the daycare where the abuse occurred. Angela corroborated P.P.'s description of the daycare house. Furthermore, P.P. was able to correctly recall how many bedrooms were in the house she lived in, when the incident occurred, and that she had lived in that house for five years. Although P.P. mistakenly stated that the house was in Key Center, rather than Lakebay, Angela explained that "[Key Center is] beside Lakebay. That's – our little town is Key Center." VRP (Vol. I) at 35. Angela also clarified that P.P. was mistaken about the color of the house in Lakebay.

Third, Pierce asserts that P.P. did not have a sufficient mental capacity to form an accurate impression at the time of the incident because P.P. stated that for some time she was uncertain whether the incident was a dream. Pierce acknowledges that P.P. also testified that she thought the incident was real. Arnold testified that although P.P. was initially uncertain during her forensic interview whether Pierce had inappropriately touched her, as the interview proceeded, P.P. "was clear in her recall that [Pierce] touched [her]." VRP (Vol. VI) at 514.

As noted, the party challenging the witness's competency to testify has the burden of proving incompetency. *Brousseau*, 172 Wn.2d at 341. Given the evidence summarized above,

9

Pierce has not shown that the trial court's determination that P.P. had the requisite mental capacity at the time of the occurrence was manifestly unreasonable or made for untenable reasons or on untenable grounds. The mistakes and inconsistencies in P.P.'s recall were minor, and the record otherwise contains ample support for the trial court's determination that she had the requisite mental capacity. We conclude that Pierce has not met his burden, and consequently the trial court did not abuse its discretion.

2. Sufficient Memory to Retain an Independent Recollection

Pierce argues that the trial court abused its discretion by determining that P.P. had sufficient memory to retain an independent recollection of the incident.

First, Pierce contends that P.P.'s inability to recall her teachers' names shows that P.P. did not have sufficient memory to retain an independent recollection of the incident. As explained above, the record does not clearly reflect who P.P.'s teachers were, and P.P. was able to describe where the abuse occurred, how she was specifically abused, what she was wearing at the time of the incident, and that Pierce told her to not tell his wife about what had occurred.

Second, Pierce maintains that P.P. did not have sufficient memory to retain an independent recollection of the incident because she stated that for some time she was uncertain whether the incident was a dream. As mentioned above, P.P. testified that she was sure the incident was real and Arnold stated that after initial uncertainty, P.P. "was clear in her recall that [Pierce] touched [her]." VRP (Vol. VI) at 514.

With this evidence, the trial court did not abuse its discretion by determining that P.P. had sufficient memory to retain an independent recollection of the incident. The court did not abuse its discretion in determining that P.P. was competent to testify.

C.      Competency of J.F. to Testify

Pierce also claims the trial court erred in applying the *Allen* factors with respect to J.F.[6] We hold that the trial court did not abuse its discretion by determining that J.F. was competent to testify.

    1.  Obligation to Speak the Truth on the Witness Stand

Pierce argues that the trial court abused its discretion by determining that J.F. understood her obligation to speak the truth on the witness stand. He asserts that J.F.'s statement that it would be okay to guess the answer to a question that she did not know to show that she did not understand the obligation to speak the truth.

While J.F. initially stated that it would be better to guess if she did not know the answer to a question, the State also had J.F. confirm that she would not make guesses in court:

| [Prosecution]: | Okay.  Here in court, [J.F.], it is really important that you don't guess about anything you aren't sure about.  Okay? |
|---|---|
| [J.F.]: | Okay. |
| [Prosecution]: | Can you look at the judge and tell her that you promise not to make any guesses? |
| [J.F.]: | I promise not to make any guesses here in court. |
| [Prosecution]: | Okay.  So I want to make sure you're clear.  If I ask you a question and you don't know the answer, you are not to make a guess.  You are to tell the truth and say, I don't know the answer.  Do you understand that? |

_____

[6] Pierce's assignments of error 2 and 4 are identical; each assigns error to findings 1 through 5 in relation to P.P.'s competency.  Pierce's only assignment of error, 3, in relation to J.F.'s competency challenges the trial court's conclusion that J.F. was competent to testify.  From the context, assignment of error 4 was likely intended to refer to J.F., instead of merely duplicating the assignment relating to P.P.  Pierce, however, presents arguments related only to factors 1, 2, and 3.  Consistently with *Rush*, 190 Wn. App. at 956, we consider only those arguments.  We follow this approach whether or not assignment of error 4 is deemed to apply to J.F.

[J.F.]:                    Yes.

VRP (Vol. III) at 320-21. Given J.F.'s acknowledgement that guessing would be wrong and her promise to the judge not to guess, we conclude that the trial court did not abuse its discretion in determining that she understood her obligation to speak the truth.

2. Mental Capacity at the Time of the Occurrence

Pierce maintains that the trial court erred by determining that J.F. had the mental capacity at the time of the alleged occurrence to receive an accurate impression of the occurrence.

First, Pierce suggests that because the trial court did not establish when the alleged abuse occurred, it could not have reasonably determined whether J.F. had sufficient mental capacity at the time to receive an accurate impression of the event. The trial court viewed Arnold's interview with J.F., during which J.F. disclosed that the incidents involving Pierce occurred when she was seven and in second grade. J.F. was born in August 2006. This suggests that the trial court could have reasonably determined that J.F. alleged that the incidents occurred between August 2013 and August 2014.

Second, Pierce argues that J.F.'s inability to recall where she went to school or her teachers' names shows that she did not have sufficient mental capacity to receive an accurate impression of the incident. Although J.F. was not able to recall her teachers' names, she was able to recall the names of her cats that she had when she was in second grade, as well as the layout of the daycare center. There was a reasonable basis for the trial court to conclude that J.F. had the requisite mental capacity.

Consequently, we hold that the trial court did not abuse its discretion in determining that J.F. had the mental capacity at the time of the alleged occurrence to receive an accurate impression of the occurrence.

3. Sufficient Memory to Retain an Independent Recollection

Pierce contends that the trial court abused its discretion by determining that J.F. had sufficient memory to retain an independent recollection of the incident. Although J.F. wavered in her testimony regarding where some of the incidents took place, she consistently stated that one of the incidents occurred in Pierce's motor home. *See State v. S.J.W.*, 149 Wn. App. 912, 926, 206 P.3d 355 (2009), *affirmed on other grounds*, 170 Wn.2d 92 (2010). Thus, it was reasonable for the trial court to determine that J.F. had sufficient memory to retain an independent recollection.

Pierce also suggests that J.F. did not have an independent recollection because she overheard P.P.'s initial disclosure, but the record does not support this assertion. The record shows that J.F. was not present when P.P. disclosed to Angela, and Angela and Profitt testified that they did not see J.F. present during any of the subsequent discussions among the adults about P.P.'s disclosure. Furthermore, P.P. testified that she never spoke to J.F. about Pierce touching her, and J.F. testified that she did not remember P.P. saying anything that stuck out to her during the camping trip. Thus, it was reasonable for the trial court to determine that J.F. had sufficient memory to retain an independent recollection.

For these reasons, the trial court did not abuse its discretion in determining that J.F. was competent to testify.

II. CHILD HEARSAY

Pierce argues that the trial court erred by admitting child hearsay evidence. He challenges the trial court's findings with respect to P.P.'s motive to lie, the spontaneity of her disclosures, the timing and relationship of her disclosures, and the possibility of her faulty recollection. He also challenges the court's findings on J.F.'s motive to lie and the timing and relationship of her disclosures. We conclude that the trial court did not err.

A.    Legal Principles and Standard of Review

We review the trial court's decision to admit child hearsay statements for an abuse of discretion. *State v. Kennealy*, 151 Wn. App. 861, 879, 214 P.3d 200 (2009). We review challenges to findings of fact for substantial evidence. *State v. Halstien*, 122 Wn.2d 109, 128, 857 P.2d 270 (1993). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that an assertion is true. *Id.* at 129. Unchallenged findings are verities on appeal. *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015). We may affirm the trial court's evidentiary rulings on any basis supported by the record. *Kennealy*, 151 Wn. App. at 879.

Out-of-court statements by a child under the age of 10 who testifies at the trial may be admitted if the court finds sufficient indicia of reliability. RCW 9A.44.120. *State v. Ryan* established that the trial court considers nine factors to determine the reliability of child hearsay statements. 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). The *Ryan* factors are:

> (1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statement; (4) the spontaneity of the statements; (5) the timing of the declaration and the relationship between the declarant and the witness; (6) whether the statement contained express assertions of past fact; (7) whether the declarant's lack of knowledge could be established through cross-examination; (8) the remoteness of the possibility of the

declarant's recollection being faulty; and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.

*Kennealy*, 151 Wn. App. at 880 (footnote omitted). We have noted that the seventh factor, whether the declarant's lack of knowledge could be established through cross-examination, does not apply in circumstances where the child testifies at trial. *Kennealy*, 151 Wn. App. at 880 n.6. Additionally, we have reasoned that the sixth factor, whether the statements contained express assertions of past fact, need not be satisfied "so long as other factors indicating reliability are considered." *State v. Young*, 62 Wn. App. 895, 902, 802 P.2d 829 (1991). No single factor is dispositive and we strive to determine whether the factors are substantially met based on an overall evaluation of the factors. *Kennealy*, 151 Wn. App. at 881.

B.      Statements of P.P.

Pierce argues that the trial court erred by admitting P.P.'s child hearsay statements to Angela, Patrick, Profitt, and Arnold about Pierce touching her genitals.[7] We disagree.

1. Motive to Lie (*Ryan* Factor 1)

Pierce maintains that the trial court erred by determining that P.P. did not have a motive to lie about the incident.

First, Pierce asserts that the animosity between him, Angela, and Patrick could have provided P.P. with a reason to lie. Although P.P. knew that her parents did not like Pierce, she stated that she thought that she switched daycares because her parents found a different daycare and she did not recall any fighting between Pierce and her parents. When the State asked P.P.

---

[7] Although Pierce identifies *Ryan* factors 1, 3, 4, 5, and 6 in his assignment of error, he presents arguments related only to factors 1, 4, 5, and 8. We therefore decline to consider factors 3 and 6. *See Rush*, 190 Wn. App. at 956.

why she was present to testify, she responded, "Because [Pierce] did something wrong that he wasn't supposed to." VRP (Vol. I) at 26.

Second, Pierce claims that Angela "badgered [P.P.] to say that Pierce had touched her [genitals]." Br. of Appellant at 50. However, the citations in Pierce's briefing do not support this assertion, and some of the citations refer to testimony from Profitt. The record shows to the contrary that Angela's questioning at the time of the initial disclosure was not badgering, but was the sort of reasonable inquiry a parent might make in response to a child's disclosure of this nature. Understandably concerned about the unusual statement from P.P. that Pierce had carried her upstairs on his shoulder, Angela asked P.P. if he touched her. When P.P. dropped her head and avoided eye contact, it was reasonable for Angela to suspect that there was something going on and to question her again. Angela asked P.P. whether Pierce touched her and where he touched her, but the record does not show that Angela asked P.P. whether she was touched in a particular place. This line of inquiry from a parent was reasonable under the circumstances. Also, although Angela did continue to question P.P. for the following several days, the fact remains that P.P.'s initial disclosure came after only the second time Angela asked her if Pierce touched her.

Pierce's remaining citations refer to Profitt asking P.P., "[D]id [Pierce] touch you anywhere your bathing suit would cover?" VRP (Vol. II) at 264-65. P.P. did not respond to Profitt's question and Profitt did not pursue the issue. Pierce has not explained why Profitt's question suggests that P.P. was motivated to lie about the incident, and we do not consider conclusory arguments unsupported by citation to authority or rational argument. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

16

Finally, Pierce argues that inconsistent statements by a child may be indicative of a child's motivation to lie, citing *Ryan*, 103 Wn.2d 165. In *Ryan*, one of the victims' mothers found him with candy that he was not allowed to have, and the victim made inconsistent statements regarding where he acquired the candy. 103 Wn.2d at 168. Our Supreme Court explained that "there was a motive to lie, and each child initially told a different version of the source of the candy they were not supposed to have." *Ryan*, 103 Wn.2d at 176. The court's analysis in *Ryan* appears to focus on the fact that the children were not allowed to have candy, which provided them a motive to lie about how they acquired the candy in order to avoid punishment. Given those circumstances, the inconsistencies in the children's statements in *Ryan* could have been viewed as supporting the inference that the children were lying.

Unlike the circumstances in *Ryan*, there is nothing in the record to suggest that P.P. fabricated her disclosure in order to avoid potential punishment. P.P. gave inconsistent answers to Angela's questions over the several day period after the initial disclosure. Although those inconsistencies might call into question P.P.'s credibility generally, they do not indicate a motivation to lie. Pierce's contention is unpersuasive.

Substantial evidence supports the trial court's finding that P.P. did not have a motive to lie.

2. Spontaneity (*Ryan* Factor 4)

Pierce contends that P.P.'s disclosures were not spontaneous because Angela repeatedly questioned her about her disclosure. We have explained that "statements made in response to questioning are spontaneous so long as the questions are not leading or suggestive." *Kennealy*, 151 Wn. App. at 883. After P.P. left the camp fire, Angela followed P.P. and asked her, "[D]id

[Pierce] touch you?" and after an ambiguous response, P.P. responded, "Yes." VRP (Vol. I) at 58. Angela then asked P.P., "Where did he touch you at?" and P.P. responded that Pierce had touched her genitals. VRP (Vol. I) at 58. Although Angela's question regarding touching was leading, the question regarding where Pierce touched P.P. was open ended and did not suggest any particular response.[8]

After Angela's questioning of P.P., Patrick also questioned P.P. Patrick asked P.P. "what happened" and P.P. told him that Pierce "did a spider, like spider fingers on her leg. . . . [A]nd then he – he touched me." VRP (Vol. II) at 215-16. Patrick asked P.P. where Pierce touched her and she responded that he touched her genitals. Patrick's questions were almost entirely open-ended and prompted P.P. to disclose details that she did not disclose to Angela. Therefore, based on the circumstances surrounding P.P.'s disclosure to Angela and Patrick, we conclude that substantial evidence supports the trial court's finding that P.P.'s disclosures were spontaneous.

3. Timing and Relationship (*Ryan* Factor 5)

Pierce argues that P.P.'s disclosures to Angela and Patrick are not reliable because both of them had animosity toward Pierce. We have reasoned that "[w]hen the witness is in a position of trust with a child, this factor is likely to enhance the reliability of the child's statement." *Kennealy*, 151 Wn. App. at 884. Hence, the relationship in question is that of the declarant to the witness, not the witness to the defendant. P.P. initially disclosed to her parents, Angela and

---

[8] Profitt's question to P.P., whether Pierce touched her anywhere her bathing suit would cover, is more suggestive of an answer than Angela's questioning, but does not necessarily suggest an inappropriate touching. Further, Pierce does not argue that P.P.'s statements lacked spontaneity on this basis.

Patrick, with whom she was in a relationship of trust. *See id.* Substantial evidence supports the trial court's finding on this factor.

    4. Possibility of Faulty Recollection (*Ryan* Factor 8)

Pierce asserts that the possibility of P.P. having a faulty recollection is not remote because P.P. was not sure if the incident was a dream, P.P. could not provide sufficient objective detail of the incident, and P.P.'s testimony at trial was "vague and reluctant." Br. of Appellant at 52-53. At trial, P.P. testified that the incident really occurred and was not a dream. P.P. was also able to describe where the abuse occurred, how she was specifically abused, what she was wearing at the time of the incident, and that Pierce told her to not tell his wife about what had occurred. Arnold additionally testified that she did not have any concerns that P.P. was coached or that she was overly suggestible. Therefore, we disagree with Pierce's challenge on the possibility of faulty recollection.

We consider whether the *Ryan* factors have been substantially met by evaluating all the factors as a whole. *See Kennealy*, 151 Wn. App. at 881. All of the reliability findings challenged by Pierce are supported by substantial evidence. Furthermore, because we treat the unchallenged findings as verities on appeal, those findings not challenged by Pierce support our conclusion that the *Ryan* factors are substantially met. *Rush*, 190 Wn. App. at 956. We accordingly hold that the trial court did not abuse its discretion by admitting P.P.'s child hearsay statements to Angela, Patrick, Profitt, and Arnold.

C.      Statements of J.F.

Pierce argues that the trial court erred by admitting J.F.'s child hearsay statements to Profitt, Arnold, Jamie Robertson, and Michelle Breland about Pierce touching her genitals.[9]  We disagree.

1.      Motive to Lie (*Ryan* Factor 1)

Pierce maintains that the trial court erred by determining that J.F. had no motive to lie. Pierce's argument on this issue appears to focus on whether Profitt fabricated J.F.'s disclosure, stating, "It seems unlikely that [J.F.'s] disclosure ever occurred."  Br. of Appellant at 53. However, whether Profitt fabricated J.F.'s initial disclosure is not immediately related to whether J.F. had a motive to lie about abuse.  Although Robertson stated that she had some problems with J.F. lying, she also testified that she did not think "J.F. [had] any reason to misrepresent what she says [Pierce] did to her."  VRP (Vol. III) at 347.  Additionally, Robertson and Profitt testified that J.F. was generally a truthful child.  Therefore, we conclude that substantial evidence supports the trial court's finding that J.F. had no motive to lie.

2.  Timing and Relationship (*Ryan* Factor 5)

Pierce mentions the trial court's finding regarding the timing, consistency, and relationships involved in J.F.'s disclosures, but does not include any argument regarding this factor.  We do not consider conclusory arguments unsupported by citation to authority or rational argument.  *Mason*, 170 Wn. App. at 384.  Therefore, we decline to consider this issue.

---

[9] Although Pierce identifies *Ryan* factors 1, 3, 4, 5, 6, and 7 in his assignment of error, he addresses only factors 1 and 5 in his argument.  We accordingly decline to consider factors 3, 4, 6, and 7.  *See Rush*, 190 Wn. App. at 956.

All of the relevant reliability findings are supported by substantial evidence or are unchallenged verities. As noted above, because we consider the reliability factors taken together as a whole, we are satisfied the *Ryan* factors were substantially met. *Kennealy*, 151 Wn. App. at 881. We accordingly hold that the trial court did not abuse its discretion by admitting J.F.'s child hearsay statements to Profitt, Robertson, Arnold, and Breland.

C.     Forensic Interviews

For the first time in his reply brief, Pierce argues that the trial court erred by admitting the forensic interviews of P.P. and J.F. because they contained information unrelated to the abuse that could have caused the jury to improperly sympathize with the victims. Our Supreme Court has held that "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we decline to consider this issue.

III. JUROR 8

Pierce argues that the trial court erred by failing to dismiss juror 8 because juror 8 may have been sleeping. We disagree.

A.     Legal Principles and Standard of Review

Under RCW 2.36.110, a judge shall "excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of . . . inattention." CrR 6.5 also states, "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged, and the clerk shall draw the name of an alternate who shall take the juror's place on the jury." We have explained that RCW 2.36.110 and CrR 6.5 "place a continuous obligation on the trial court to excuse any juror who is unfit and

unable to perform the duties of a juror." *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000).

We review the trial court's decision regarding whether to excuse a juror for abuse of discretion. *Id*. at 226. We defer to the trial court's credibility determinations, since the trial court was able to observe the juror and court proceedings. *Id*. at 229.

B.     Fitness of Juror 8

Outside the presence of the jury, the trial court explained that juror 1 had spoken with the court's judicial assistant and informed the assistant that he believed that juror 8 was sleeping. The court stated that she had not observed juror 8 because she was taking notes, but commented that court staff saw juror 8 leaning her head back and closing her eyes. The State mentioned that one of its witnesses had also observed that juror 8 appeared to be fighting to stay awake. Pierce's counsel stated that he saw juror 8 close her eyes, but he "didn't get the impression she was actually sleeping." VRP (Vol. XII) at 1179. After the jury returned, the court reminded the jury that it was important for them to pay close attention and that the jurors could request breaks if needed.

During the State's closing argument, juror 1 stated that he believed juror 8 was sleeping, although juror 8 responded that she was listening. After the jury had begun deliberating, Pierce's counsel raised the issue of whether juror 8 had been sleeping and asked the court to dismiss juror 8. The State suggested that the court question juror 8 to determine whether she could effectively fulfill her obligation as a juror. When asked if she was sleeping, juror 8 responded that she had closed her eyes but she was not "full sleep[ing]," and that she had "fully and fairly heard all the evidence in the case in a way that [enabled her] to perform [her] duties as a juror." VRP (Vol.

XVI) at 1706-07.  Pierce's counsel renewed his motion to dismiss juror 8, and the trial court denied the motion.

Pierce asserts that the trial court was obligated to stop the proceedings and inquire about juror 8's attentiveness after juror 1 first informed the court that he thought juror 8 was sleeping. However, the record shows that the trial court had been taking notes and had not seen whether juror 8 was sleeping.  Additionally, Pierce's counsel told the court that he did not think that juror 8 was actually sleeping.  Therefore, we conclude that the trial court did not abuse its discretion by choosing to remind the jury to pay attention, rather than questioning juror 8 at that time.

Pierce contends that the trial court erred by not questioning juror 8 after juror 1 mentioned that juror 8 was sleeping during the State's closing argument.  Immediately after juror 1 stated that he thought juror 8 was sleeping, juror 8 responded that she was not sleeping.  The trial court could have reasonably determined that juror 8 was not sleeping based on her quick response to juror 1's statement.  We conclude that the trial court did not abuse its discretion by not questioning juror 8 during the State's closing argument.

Pierce further argues that the trial court erred by accepting juror 8's explanation that she was not sleeping because "a sleeping or dozing juror would hardly know whether she had heard all of the evidence."  Br. of Appellant at 57.  However, whether juror 8 was mistaken or lied to the superior court about hearing all of the evidence presents a credibility issue.  We generally defer to the credibility determinations of the trial court, who was able to directly observe juror 8. *Jorden*, 103 Wn. App. at 229.  Therefore, we hold that the trial court did not abuse its discretion by declining to dismiss juror 8.

IV. SUFFICIENCY OF THE EVIDENCE

Pierce maintains that the State did not present sufficient evidence for a jury to convict him of attempted first degree child molestation as to P.P. and first degree child molestation as to J.F.[10] We disagree.

A.      Legal Principles and Standard of Review

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. *Id*. We do not review credibility determinations, which are reserved for the trier of fact. *Id*. Furthermore, we consider direct and circumstantial evidence equally reliable in evaluating the sufficiency of the evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

Under RCW 9A.44.083, a person is guilty of first degree child molestation when the person has, or knowingly causes another person under the age of 18 to have, sexual contact with another who is less than twelve years old and not married to the perpetrator, and the perpetrator is at least 36 months older than the victim. RCW 9A.44.010(2) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying

---

[10] Pierce states in his brief that "[t]he jury acquitted Pierce of two counts of first degree child molestation against J.F. and thus it is unknown what acts they relied upon to convict him for the one count of conviction." Br. of Appellant at 58. However, Pierce has not cited to any authority or made additional argument regarding jury unanimity. We do not consider conclusory arguments unsupported by citation to authority or rational argument. *Mason*, 170 Wn. App. at 384. Therefore, we decline to consider this issue.

sexual desire of either party or a third party." Under RCW 9A.28.020(1), "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of the crime."

Our Supreme Court has explained that in the context of first degree child molestation, the definition of "sexual contact" in RCW 9A.44.010(2) "excludes inadvertent touching or contact from being a crime." *State v. Lorenz*, 152 Wn.2d 22, 34, 93 P.3d 133 (2004). Division One of our court has held that "'[p]roof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touch was for the purpose of sexual gratification.'" *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991)). However, if the contact occurred when clothes covered the intimate part, we require additional proof of sexual purpose. *Id*. at 21. Furthermore, "[c]ontact is 'intimate' . . . if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." *Id.* (quoting *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008)).

B.     Attempted Molestation of P.P.

P.P. testified that when she was eight years old and in second grade, Pierce carried her to the upstairs of the daycare and touched her genitals. P.P. stated that the touching was over her clothing. P.P. also testified that Pierce told her not to tell his wife about the encounter. Angela further stated that while Pierce would occasionally help his wife with daycare matters, she did not think that he had much of a role in operating the daycare. P.P. also mentioned that Pierce had never helped her use the restroom or change clothes while she was at the daycare.

Based on P.P.'s and Angela's testimony, the jury could have reasonably found beyond a reasonable doubt that Pierce took a substantial step towards first degree child molestation by touching P.P.'s genitals over her clothing. The jury could have also inferred that the touching was for the purpose of gratifying sexual desire and not innocent or accidental because Pierce was unrelated to P.P., participated minimally in the operation of the daycare, and told P.P. not to tell anyone about the incident. Therefore, we hold that the State presented sufficient evidence to convict Pierce of attempted first degree child molestation.

C.      Molestation of J.F.

The State submitted J.F.'s forensic interview into evidence and the interview was published to the jury. During the interview, J.F. stated that all of the incidents took place when she was seven. J.F. recalled that the most recent incident took place in Pierce's motor home, and that other incidents had occurred in Pierce's bedroom and the daycare's upstairs living room. J.F. stated that Pierce directly touched her genitals in the motor home. J.F. also mentioned that Pierce told her not to tell anyone about the incident in the motor home. J.F.'s forensic interview establishes that Pierce directly touched J.F.'s genitals.

The jury reasonably could have inferred that the touching was for the purpose of gratifying sexual desire and not accidental or innocent based on the direct contact and the fact that Pierce told J.F. to not tell anyone about the contact. Therefore, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could find that the elements of first degree child molestation were proven beyond a reasonable doubt. We hold that the State presented sufficient evidence to convict Pierce of first degree child molestation.

No. 49596-1-II

CONCLUSION

We affirm Pierce's convictions.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, J.T.

We concur:

Lee, A.C.J.

Sutton, J.